IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
(SPRINGFIELD DIVISION)

| | |
|---|---|
| ESTATE OF DENNIS E. ADAMS, ) <br> Deceased, By KYLE ADAMS, ) <br> Administrator ) <br> ) <br>         Plaintiff, ) <br>   v. ) <br> ) <br> CHRISTIAN COUNTY, ) <br> ) <br> BRUCE KETTLEKAMP, in his official ) <br> capacity as Sheriff of Christian County ) <br> , and ) <br> ) <br> ANDREW NELSON, in his official capacity) <br> as Christian County Jail Administrator and ) <br> in his individual capacity ) <br> ) <br>        Defendants. ) | No.  13 CV 3300 |

## THIRD AMENDED COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Estate of Dennis E. Adams, deceased, ("Decedent" or "Dennis Adams") by Kyle Adams, court appointed Administrator of the Estate, by and through their attorneys, Daniel Noll and Jon Noll of the Noll Law Office, LLC, and James W. Ackerman and William Vig of the Ackerman Law Office, and in support of their Second Amended Complaint and Jury Demand states as follows:

## NATURE OF CASE

1.      This suit arises pursuant to 42 U.S.C. § 1983 to address deprivations of Plaintiffs rights under the Constitution of the United States.

## JURISDICTION

1

2.      This action is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. § 1331 and 28 U.S.C. 1367(a).

## VENUE

3.      The violations of civil rights alleged herein were committed within the Central District of Illinois, to wit: in the City of Taylorville, County of Christian, State of Illinois. This action properly lies in the United States District Court for the Central District of Illinois, Springfield Division.

## PARTY PLAINTIFFS

4.      The Decedent, Dennis E. Adams, was a United States Citizen. He resided in the City of Taylorville, County of Christian, State of Illinois. He committed suicide on November 4, 2011, in the Christian County Correctional Center.

5.      Kyle Adams, Plaintiff or Petitioner, is a United States Citizen. He is a resident of the Village of Farmersville, County of Montgomery, State of Illinois. He is the Decedent's biological son and Administrator of the Decedent's estate. Petitioner brings this action on behalf of himself, and for other next of kin. The Decedent is survived by the following heirs: two adult children, one minor child, and a surviving spouse.

## PARTY DEFENDANTS

6.      In his official capacity, Sheriff Bruce Kettlekamp is joined as a Party Defendant herein because, at all relevant time, he was an employee and agent of the Christian County Sheriff's Office. At all relevant times, Sheriff Kettlekamp acted under color of law as a duly elected Sheriff and within the scope of his employment.

7.      In his official and individual capacities, Jail Administrator Andrew Nelson is joined as a Party Defendant herein because, at all relevant times, he was an employee and agent

of the Christian County Sheriff's Office. At all relevant times, Jail Administrator Nelson acted under color of law as a duly appointed Christian County Sheriff's Deputy and within the scope of his employment.

8.     Christian County is the legal entity under which Sheriff Kettlekamp and Jail Administrator Nelson all were employed. It is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees, and for injury occasioned thereby. It was or is the employer of Sheriff Kettlekamp and Jail Administrator Nelson.

## FACTUAL BACKGROUND

9.     According to the police report of Sgt. Childers, a copy of which is attached as Exhibit 1 and herein incorporated by this reference, on August 19, 2011, at approximately 7:51 a.m. Christian County Sheriff's Deputies responded to a call that a woman had been shot.

10.     Upon arrival, Officer Miller was advised by Jolene Adams, wife of Mr. Adams, that had just been shot by the Decedent, Dennis Adams.

11.     Jolene told Officer Miller that she was getting into her vehicle, which was parked in the driveway, when she was shot in the shoulder. Mr. Adams fired several more times towards Jolene before leaving the scene.

12.     Mr. Adams was located approximately two hours later at 9:22 a.m. near the railroad tracks in the 100 block of South Baughman Road in Taylorville, Illinois.

13.     When they found Mr. Adams, he had a revolver handgun to his head.

14.     The Illinois State Police Crisis Negotiator was called. Numerous police officers from the Christian County Sheriff's Office were also to and present at the scene.

15.     After an approximately three hour long standoff, Mr. Adams was apprehended by Officer Nation and Deputy Marron when he placed the revolver down to wipe his forehead.

16.     He was arrested and transported to Taylorville Memorial Hospital where he was treated for a small abrasion on his right forearm and an old ankle injury.

17.     According to the Christian County Mental Health Crisis Assessment form dated August 19, 2011, which is attached as Exhibit 2 and herein incorporated by this reference, Mr. Adams was evaluated for suicidal tendencies by Barb Brauer. The evaluation occured at Taylorville Memorial Hospital.

18.     After his evaluation, Mr. Adams was transported to the Christian County Correctional Center.

19.     The Christian County Correctional Center Padded Cell Report, a copy of which is attached as Exhibit 3 and herein incorporated by this reference, states that Mr. Adams was placed into the "Padded Cell" at 1 p.m.

20.     He was placed into the Padded Cell because he was a known suicide risk.

21.     This placement was approved by Jail Administrator Nelson.

22.     In addition, after holding a gun to his head for three hours, Mr. Adams was placed on a 30 minute watch as opposed to the standard 15 minute watch pursuant to Jail Administrator Nelson.

23.     Mr. Adams was charged with two counts of Attempted First Degree Murder.

24.     On August 21, 2011, Mr. Adams bond was set at $2,000,000.

25.     He was unable to post requisite amount of money and remained incarcerated at the Christian County Correctional Center.

26.     On August 24, 2011, Mr. Adams court appointed public defender, Michael Havera, filed a Motion for Examination by Psychiatrist, a copy of which is attached as Exhibit 4 and herein incorporated by this reference.

27.     According to the Motion for Examination by Psychiatrist, Mr. Havera had a bonafide doubt as to Mr. Adam's fitness to stand trial or to plead and be sentenced.

28.     Mr. Havera based that opinion upon Mr. Adams behavior and lack of ability to comprehend his actions.

29.     On August 25, 2011, Mr. Adams was denied bond meaning that no amount of money would secure his release while his charges were pending.

30.     Also on August 25, 2011, Mr. Adams was re-evaluated by the Christian County Mental Health Association.

31.     According to a second Christian County Mental Health Association Crisis Assessment form dated August 25, 2011, a copy of which is attached as Exhibit 5 and herein incorporated by this reference, Mr. Adams was reevaluated by Julie Chastain.

32.     Ms. Chastain recommended that Mr. Adams remain in the Padded Cell because of suicidal tendencies and that he needed to be re-evaluated on August 26, 2011 in the morning.

33.     No evaluation occurred after August 25, 2011.

34.     On August 30, 2011, Mr. Havera argued his Motion for Examination by Psychiatrist. This motion was granted.

35.     Subsequently, Dr. Terry Killian of Killian and Associates in Springfield, Illinois was appointed to conduct a psychiatric examination of Mr. Adams for the purpose of giving opinions regarding Mr. Adam's fitness to stand trial, his sanity at the time of his alleged crimes, and for possible psychiatric mitigation.

36.     The following day, according to the Padded Cell History and Isolation Cell History, a copy of which is attached as Group Exhibit 6 and herein incorporated by this reference, Dennis Adams was transferred out of the Padded Cell and into the "Isolation Cell."

37.     This was done at the direction of Jail Administrator Nelson.

38.     This transfer was also ordered without the aid, direction or consultation of any mental health professional and against the recommendation of Julie Chastain on August 25, 2011.

39.     According to a letter written by Jail Administrator Nelson to Christian County Sheriff Bruce Kettlekamp dated December 2, 2011, a copy of which is attached as Exhibit 7 and herein incorporated by this reference, Mr. Adams was transferred out of the Padded Cell and into the Isolation Cell because another inmate, Lacey Myers, was booked into the Christian County Correctional Center.

40.     Christian County Correctional Center staff knew that Ms. Myers suffered from mental health issues including depression and anxiety and was a suicide risk.

41.     The Christian County Correctional Center has only one Padded Cell. *See:* Ex. 7, pg. 2

42.     The Christian County Correctional Center has only one Isolation Cell. *Id.*

43.     This transfer was conducted pursuant to a written or unwritten Christian County policy, practice or custom of transferring inmates out of the Padded Cell based upon a discretionary determination by Jail Administrator Nelson of the immediate needs of other inmates, the staffing constraints required to monitor those inmates in the Padded Cell, and the capacities imposed by the Christian County Correctional Center itself.

44. According to the December 2, 2011 letter by Jail Administrator Nelson, "Christian County Correctional Center has only one padded cell at its disposal and housing therein is based on immediate need." *Id.*

45. According to the Padded Cell History, Inmate Myers was housed in the Padded Cell from August 31, 2011 to September 1, 2011.

46. The Padded Cell was vacant from September 1, 2011 to September 6, 2011 while Mr. Adams was house in the Isolation Cell.

47. According to the Isolation Cell History, a copy of which is included in Group Exhibit 6 and herein incorporated by this reference, Mr. Adams was housed in the Isolation Cell from August 31, 2011 to September 13, 2011.

48. According to his letter, Jail Administrator Nelson ordered Mr. Adams transferred from the Isolation Cell to the Bullpen area on September 14, 2011.

49. This transfer was also ordered without the aid, direction or consultation of any mental health professional and against the recommendation of Julie Chastain on August 25, 2011.

50. This transfer was conducted pursuant to a written or unwritten Christian County policy, practice or custom of transferring inmates out of the Isolation Cell based upon a discretionary determination by Jail Administrator Nelson of the immediate needs of other inmates, the staffing constraints required to monitor those inmates in the Isolation Cell, and the capacities imposed by the Christian County Correctional Center itself.

51. According to his letter to Sheriff Kettlekamp, Jail Administrator Nelson ordered Mr. Adams transferred on September 14, 2011 because of another inmate incurred a disciplinary infraction. *See:* Exhibit 7, pg. 2.

52.     The Isolation Cell Report shows that the next inmate to enter into the Isolation Cell was Kyle Aaron Matthews two days later on September 16, 2011. *See:* Group Exhibit 6.

53.     Upon information and belief, the Bullpen area of the Christian County Correctional Center is a general population area. It has less restrictions and less monitoring than the Padded Cell and Isolation Cell.

54.     Mr. Adams remained in the Bullpen area of the Christian County Correctional Center until his death on November 4, 2011.

55.     On November 4, 2011, at approximately 5:30 a.m., Dennis Earl Adams hung himself in his jail cell.

56.     On November 4, 2011, Mr. Adams was due in court regarding a divorce case which was filed by Jolene Adams.

57.     Upon information and belief, it is well known in the jail administration community that court dates and divorces are added stressors which create the high risk of suicide in inmates, especially those which are already exhibiting suicidal tendencies.

58.     While he was evaluated on August 19, 2011 and August 25, 2011 by Christian County Mental Health, Mr. Adams never received any mental health treatment while at the Christian County Correctional Center after they knew or should have known that he was a suicide risk.

59.     Mr. Adams should never have been transferred out of the Padded Cell.

60.     Mr. Adams should never have been transferred out of the Isolation Cell.

61.     Upon information and belief, numerous Christian County Sheriff Office Employees, Christian County Correctional Center Employees, and Christian County Sheriff

Kettlekamp were informed by the family and friends of Dennis Earl Adams that he was acting in a bizarre manner and that they were afraid that he was very suicidal.

      62.    Throughout his time at the Christian County Correctional Center, Mr. Adams was:

        a.  speaking to his deceased father;

        b.  seeing demons;

        c.  writing his life story and mailing it to friends and family members;

        d.  diagnosed with depression;

        e.  exhibiting classic suicidal tendencies; and

        f.  informing friends and family how to divide his estate.

      63.    According to a copy of a November 4, 2011 State Journal Register Article, a copy of which is attached as Exhibit 8 and herein incorporated by this reference, Sheriff Kettlekamp stated, "If we had any indication he had suicidal thoughts, we would have put him in a separate, padded cell. But we had no indication that he would do something like that."

      64.    On November 4, 2011, the Padded Cell History and Isolation Cell History show that both cells were unoccupied. *See:* Group Exhibit 6.

      65.    The Christian County Sheriff's Office had a contract to house inmates for the United States Marshals Service.

      66.    The United States Marshals service has an abundance of listed resources to assist contracting counties to establish and maintain a reasonable suicide prevention program.

      67.    The Christian County Sheriff's Office deliberately ignored the suicide prevention guidelines as recommended by the U.S. Marshals Service.

## COUNT I

## CONDITIONS OF CONFINEMENT

## IN VIOLATION OF THE 14th AMENDMENT

## (OFFICIAL CAPACITY)

68.     The Plaintiff restates and realleges all previously pled paragraphs.

69.     Dennis Earl Adams was incarcerated under conditions that posed a substantial risk of serious harm to his health or safety in that he was transferred out of the Padded Cell without the aid, recommendation or advice of a mental health professional and against the recommendation of Julie Chastain on August 25, 2011.

70.     Defendants Bruce Kettlekamp, Andrew Nelson and Christian County were deliberately indifferent to the Decedent's health or safety.

71.     Defendants conduct caused harm to the Decedent.

72.     The Decedent committed suicide in the Christian County Correctional Center.

73.     At all times, the Defendants acted under the color of law.

74.     The Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Estate of Dennis E. Adams, prays for judgment against Sheriff Bruce Kettlekamp, Jail Administrator Andrew Nelson, and Christian County as follows:

A.  Compensatory damages in an amount to be determined at trial;

B.  Reasonable attorney's fees and costs; and

C.  For such other and further relief as this court deems reasonable.

## COUNT II

### CONDITIONS OF CONFINEMENT

### IN VIOLATION OF THE 14th AMENDMENT

### (INDIVIDUAL CAPACITY)

75.     The Plaintiff restates and realleges all previously pled paragraphs.

76.     Dennis Earl Adams was incarcerated under conditions that posed a substantial risk of serious harm to his health or safety in that he was transferred out of the Padded Cell without the aid, recommendation or advice of a mental health professional and against the recommendation of Julie Chastain on August 25, 2011.

77.     Defendant Andrew Nelson was deliberately indifferent to the Decedent's health or safety.

78.     Defendants conduct caused harm to the Decedent.

79.     The Decedent committed suicide in the Christian County Correctional Center.

80.     At all times, the Defendants acted under the color of law.

81.     The Plaintiff demands trial by jury.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Estate of Dennis E. Adams, prays for judgment against Jail Administrator Andrew Nelson as follows:

A.  Compensatory damages in an amount to be determined at trial;

B.  Punitive damages in an amount to be determined at trial;

C.  Reasonable attorney's fees and costs; and

D.  For such other and further relief as this court deems reasonable.

## COUNT III

## CONDITIONS OF CONFINEMENT

## IN VIOLATION OF THE 14th AMENDMENT

## (OFFICIAL CAPACITY)

82.     The Plaintiff restates and realleges all previously pled paragraphs.

83.     Dennis Earl Adams was incarcerated under conditions that posed a substantial risk of serious harm to his health or safety in that he was transferred out of the Isolation Cell without the aid, recommendation or advice of a mental health professional and against the recommendation of Julie Chastain on August 25, 2011.

84.     Defendants Bruce Kettlekamp, Andrew Nelson and Christian County were deliberately indifferent to the Decedent's health or safety.

85.     Defendants conduct caused harm to the Decedent.

86.     The Decedent committed suicide in the Christian County Correctional Center.

87.     At all times, the Defendants acted under the color of law.

88.     The Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Estate of Dennis E. Adams, prays for judgment against Sheriff Bruce Kettlekamp, Jail Administrator Andrew Nelson, and Christian County as follows:

A.  Compensatory damages in an amount to be determined at trial;

B.  Reasonable attorney's fees and costs; and

C.  For such other and further relief as this court deems reasonable.

## COUNT IV

## CONDITIONS OF CONFINEMENT

## IN VIOLATION OF THE 14th AMENDMENT

## (INDIVIDUAL CAPACITY)

89.     The Plaintiff restates and realleges all previously pled paragraphs.

90.     Dennis Earl Adams was incarcerated under conditions that posed a substantial risk of serious harm to his health or safety in that he was transferred out of the Isolation Cell without the aid, recommendation or advice of a mental health professional and against the recommendation of Julie Chastain on August 25, 2011.

91.     Defendant Andrew Nelson was deliberately indifferent to the Decedent's health or safety.

92.     Defendants conduct caused harm to the Decedent.

93.     The Decedent committed suicide in the Christian County Correctional Center.

94.     At all times, the Defendants acted under the color of law.

95.     The Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Estate of Dennis E. Adams, prays for judgment against Jail Administrator Andrew Nelson as follows:

A.  Compensatory damages in an amount to be determined at trial;

B.  Punitive damages in an amount to be determined at trial;

C.  Reasonable attorney's fees and costs; and

D.  For such other and further relief as this court deems reasonable.

## COUNT V

## FAILURE TO PROVIDE MEDICAL ATTENTION

## IN VIOLATION OF THE 14th AMENDMENT

## (OFFICIAL CAPACITY)

96.     The Plaintiff restates and realleges all previously pled paragraphs.

97.     Dennis Earl Adams had a serious medical need.

98.     Defendants Bruce Kettlekamp, Andrew Nelson and Christian County were deliberately indifferent to the Decedent's health or safety.

99.     Defendants conduct caused harm to the Decedent.

100.    The Decedent committed suicide in the Christian County Correctional Center.

101.    At all times, the Defendants acted under the color of law.

102.    The Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Estate of Dennis E. Adams, prays for judgment against Sherriff Bruce Kettlekamp, Jail Administrator Andrew Nelson, and Christian County as follows:

A.  Compensatory damages in an amount to be determined at trial;

B.  Reasonable attorney's fees and costs; and

C.  For such other and further relief as this court deems reasonable.

## COUNT VI

## FAILURE TO PROVIDE MEDICAL ATTENTION

## IN VIOLATION OF THE 14th AMENDMENT

## (INDIVIDUAL CAPACITY)

103.    The Plaintiff restates and realleges all previously pled paragraphs.

104.    Dennis Earl Adams had a serious medical need.

105.    Defendant Andrew Nelson was deliberately indifferent to the Decedent's health or safety.

106.    Defendants conduct caused harm to the Decedent.

107.    The Decedent committed suicide in the Christian County Correctional Center.

108.    At all times, the Defendants acted under the color of law.

109.    The Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Estate of Dennis E. Adams, prays for judgment against Jail Administrator Andrew Nelson, as follows:

A.  Compensatory damages in an amount to be determined at trial;

B.  Punitive damages in an amount to be determined at trial;

C.  Reasonable attorney's fees and costs; and

D.  For such other and further relief as this court deems reasonable.

## COUNT VII

### MONELL CLAIM AGAINST CHRISTIAN COUNTY

110.    The Plaintiff restates and realleges all previously pled paragraphs.

111.    The entirety of the Christian County Correction Center's jail suicide policy was reflected in a two sentence section of the Christian County Correctional Center's "Jail Rules and Regulations" policy which is reprinted in its entirety as follows:

> "The Christian County Mental Health Center will be notified immediately of any inmate who appears to be suicidal or in a crisis state of mind. If an inmate is placed on suicide watch, the types of supervision will be documented. A suicide watch can only be terminated by the Jail Administrator, Chief Deputy or Sheriff."

112.    This policy was grossly inadequate and inherently flawed.

113.    This policy did not address most of the basic components of a suicide prevention policy.

114.    Most importantly, this policy created an inherent danger by allowing the Jail Administrator, Chief Deputy or Sheriff, to independently assess suicidal inmates and determine when they were no longer suicidal without on-going assessment by medical and/or mental health personnel.

115.    Jail staff should never be placed in a position to determine when an inmate is no longer suicidal and such decisions should only be made by medical and/or mental health personnel following an assessment of suicide risk.

116.    Neither Jail Administrator Nelson, Sherriff Kettlekamp, nor Chief Deputy Bruce Engeling, were mental health professionals or qualified to determine whether or not an inmate was a continued risk for suicide.

117.    In addition, there were numerous other omissions and flaws in Christian County's jail suicide provision prevention policy including:

a. The policy failed to address required suicide prevention training including descriptions of topics to be addressed in any suicide prevention training to its staff;

b. The policy failed to provide any written procedure or guidance on which affirmative responses to the intake screening process warranted referral to medical and/or mental health personnel;

c. The policy failed to provide any written procedure or guidance as to the suicide risk assessment process utilized by either medical and/or mental health personnel as well as the reassessment process utilized by such personnel;

d. The policy failed to provide any written procedure or guidance as to whether the suicidal inmate should be placed in a suicide-resistant cell;

e. The policy failed to provide any written procedure or guidance regarding multiple levels of observation utilized for inmates commensurate with their level of suicide risk;

f. The policy failed to provide any written procedure or guidance regarding those personnel authorized to downgrade and/or discharge an inmate from suicide precautions;

g. The policy failed to provide any written procedure or guidance regarding the proper emergency response to a suicide attempt (including hanging); AND

h. The policy failed to provide any written procedure or guidance regarding the mortality review process following an inmate suicide.

118. This policy, custom and/or practice was the moving force behind the death by the Decedent.

119.    The Plaintiff, Estate of Dennis E. Adams, demands trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Estate of Dennis E. Adams, prays for judgment against Christian

County as follows:

    A.  Compensatory damages in an amount to be determined at trial;

    B.  Reasonable attorney's fees and costs; and

    C.  For such other and further relief as this court deems reasonable.

## COUNT VIII

## MONELL CLAIM AGAINST CHRISTIAN COUNTY

120.    The Plaintiff restates and realleges all previously pled paragraphs.

121.    Prior to Dennis E. Adams incarceration at the Christian County Correctional Center, unknown Christian County Sheriff's Office personnel and employees determined that only two cells in the Christian County Correctional Center were to be used to house suicidal inmates.

122.    This decision created a written or unwritten policy, custom, and/or practice whereby the Sheriff, Jail Administrator or Chief Deputy would have to determine other alternative housing placements if more than two suicidal inmates were housed in the Christian County Correctional Center.

123.    On August 31, 2011, Jail Administrator Nelson ordered the Decedent out of the padded cell because another suicidal inmate needed to be placed in the cell based upon this policy.

124.    On September 13, 2011, Jail Administrator Nelson ordered the Decedent transferred from the isolation cell purportedly to house an inmate for disciplinary reasons.

125.    The Decedent was then placed in the general population "bullpen" cell.

126.    This policy, custom and/or practice was the moving force behind the death by the Decedent.

127.    The Plaintiff, Estate of Dennis E. Adams, demands trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Estate of Dennis E. Adams, prays for judgment against Christian County as follows:

A.  Compensatory damages in an amount to be determined at trial;

19

B.  Reasonable attorney's fees and costs; and

C.  For such other and further relief as this court deems reasonable.

## COUNT IX

### MONELL CLAIM AGAINST CHRISTIAN COUNTY

128.     The Plaintiff restates and realleges all previously pled paragraphs.

129.     The entirety of the Christian County Correction Center's jail suicide policy was reflected in a two sentence section of the Christian County Correctional Center's "Jail Rules and Regulations" policy which is reprinted in its entirety as follows:

> "The Christian County Mental Health Center will be notified immediately of any inmate who appears to be suicidal or in a crisis state of mind. If an inmate is placed on suicide watch, the types of supervision will be documented. A suicide watch can only be terminated by the Jail Administrator, Chief Deputy or Sheriff."

130.     This policy was grossly inadequate and inherently flawed.

131.     This policy did not address most of the basic components of a suicide prevention policy.

132.     This policy failed to provide any written procedure or guidance regarding treatment planning for suicidal inmates as well as follow up assessments by medical and/or mental health personnel following release from suicide precautions.

133.     This policy, custom and/or practice was the moving force behind the death by the Decedent.

134.     The Plaintiff, Estate of Dennis E. Adams, demands trial by jury.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Estate of Dennis E. Adams, prays for judgment against Christian County as follows:

A.  Compensatory damages in an amount to be determined at trial;

B.  Reasonable attorney's fees and costs; and

C.  For such other and further relief as this court deems reasonable.

21

## COUNT VII

### INDEMNITY

135.    The Plaintiff restates and realleges all previously pled paragraphs.

136.    Party Defendant Christian County is the employer of Sheriff Bruce Kettlekamp, and Jail Administrator Andrew Nelson.

137.    Sheriff Bruce Kettlekamp, and Jail Administrator Andrew Nelson committed the acts alleged above under the color of law and in the scope of employment as employees of Christian County.

138.    Christian County must indemnify all Party Defendants by applicable statute.

### PRAYER FOR RELIEF

**WHEREFORE**, should Sheriff Bruce Kettlekamp and/or  Jail Administrator Andrew Nelson be found liable for one or more of the claims set forth above, Plaintiff demands that, pursuant to 745 ILCS 10/9-102, Christian County be found liable for any compensatory judgment Plaintiffs obtain against said Party Defendant, and for such other and further relief as this court deems reasonable.

Respectfully submitted,

Estate of Dennis E. Adams**,** Plaintiff,

By:  _____/s Daniel Noll_____
                    Daniel Noll

Daniel Noll
**NOLL LAW OFFICE**
930 E. Monroe
Springfield, IL 62701
(217) 544-8441
(217) 544-8775 (FAX)