IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

ESTATE OF DENNIS E. ADAMS,        )
Deceased, By ANGELA DREW,         )
Administrator,                    )
                                  )
    Plaintiff,                    )
                                  )
    v.                            )        NO. 13-3300
                                  )
CHRISTIAN COUNTY,                 )
BRUCE KETTLEKAMP, in his          )
official capacity as Sheriff of Christian  )
County and in his individual capacity,  )
and ANDREW NELSON, in his         )
official capacity as Christian County  )
Jail Administrator and in his     )
individual capacity,              )
                                  )
    Defendants.                   )

<u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

    This is a civil rights action pursuant to 42 U.S.C. § 1983, wherein the

Plaintiff alleges the Defendants committed a number of constitutional

violations arising from the incarceration and death of Dennis E. Adams at

the Christian County Correctional Center.

    Pending before the Court is the Plaintiff's Motion for Partial

Summary Judgment.

For the reasons that follow, the Plaintiff's Motion is Allowed in part and Denied in Part.

## I. FACTS

A. Background

The Plaintiff's decedent, Dennis E. Adams, committed suicide while incarcerated in the Christian County Jail on November 4, 2011.  Dennis Adams had been arrested on August 19, 2011, after he shot his wife, Jolene Adams.

Throughout the time period relevant to this case, Defendant Andrew Nelson was the Jail Administrator of the Christian County Sheriff's Office acting within the scope of his employment under color of law.  On August 19, 2011, at approximately 7:51 a.m., Christian County Sheriff's Deputies responded to a call that a woman had been shot.  Upon arrival, Officer Miller was advised that Jolene Adams had been shot by Dennis Adams. Jolene Adams told Officer Miller that she was getting into her vehicle, which was parked in the driveway, when she was shot in the shoulder.

Dennis Adams fired several more times towards Jolene before leaving the scene.

Dennis Adams was located approximately two hours later at 9:22 a.m., near the railroad tracks in the 100 block of South Baughman Road in Taylorville, Illinois. When Mr. Adams was found, he had a revolver handgun to his head. The Illinois State Police Crisis Negotiator was called. Numerous police officers from the Christian County Sheriff's Office were also present at the scene.

Defendant Andrew Nelson was aware that after an approximately three hour long standoff, Dennis Adams was apprehended by Officer Nation and Deputy Marron when Adams placed the revolver down to wipe his forehead. Adams was arrested and transported to Taylorville Memorial Hospital where he was treated for a small abrasion on his right forearm and an old ankle injury.

According to the Christian County Mental Health Crisis Assessment form dated August 19, 2011, Dennis Adams was evaluated for suicidal tendencies at Taylorville Memorial Hospital by Barb Brauer of Christian

County Mental Health. Ms. Brauer diagnosed Adams with depressive disorder not otherwise specified. Andrew Nelson was given a copy of the August 19, 2011 Christian County Mental Health Crisis form on or about August 19, 2011.

According to the Taylorville Emergency Department Notes and the Discharge Instructions, Dr. Matthew Yociss examined Dennis Adams. In his discharge instructions, Dr. Yociss advised that Adams should be given "suicide precautions." Dr. Yociss instructed Adams that he should follow up with Dr. McClintock "as needed" for follow up care. The Taylorville Memorial Hospital Discharge Instructions were in the possession of the Christian County Sheriff's Office. No follow up care was ever given to Adams.

B. Placement at Christian County Correctional Center

After his evaluation, Dennis Adams was transported to the Christian County Correctional Center. Andrew Nelson was aware that Adams was going to be taken to the Christian County Correctional Center prior to his arrival.

The Christian County Correctional Center Padded Cell Report states that Dennis Adams was placed into the "Padded Cell" at 1 p.m. on August 19, 2011. The reason Adams was placed into the Padded Cell of the Christian County Correctional Center was because he was suicidal. The placement was approved by Andrew Nelson.

Dennis Adams was placed on a 30-minute watch as opposed to the standard 15-minute watch. When Adams arrived at the Christian County Correctional Center, Correctional Officer Bill Hogan completed an intake form. Nelson was given a copy of the intake form.

Dennis Adams was charged with two counts of Attempted First degree Murder. On August 21, 2011, Adams's bond was set at $2,000,000. Adams was unable to post the requisite amount of bond money and remained incarcerated at the Christian County Correctional Center.

On August 24, 2011, Mr. Adams's court-appointed public defender, Michael Havera, filed a motion for examination by psychiatrist. According to the motion, Mr. Havera had a bona fide doubt as to Adams's fitness to stand trial or to plead guilty and be sentenced. Mr. Havera testified that

he visited Mr. Adams approximately every two weeks. Havera stated that Adams was cooperative in his defense and at no time appeared suicidal. However, the Plaintiff alleges the fact that Mr. Havera filed the motion demonstrates that Havera noticed Adams had displayed psychiatric problems.

On August 25, 2011, Dennis Adams was denied bond, meaning that no amount of money would secure his release, while charges were pending. The same day, Mr. Adams was re-evaluated by the Christian County Mental Health Association. The Christian County Mental Health Association Crisis Assessment form dated August 25, 2011 provides that Adams was reevaluated by Julie Chastain. Ms. Chastain recommended that Adams remain in the Padded Cell because of suicidal tendencies and that he needed to be re-evaluated on the morning of August 26, 2011. Ms. Chastain diagnosed Mr. Adams with an adjustment disorder and personality disorder not otherwise specified.

No evaluation occurred after August 25, 2011. There was no mental health treatment at the Christian County Correctional Center during the

time of Dennis Adams's incarceration.

On August 30, 2011, Mr. Havera argued his motion for examination by psychiatrist. The motion was granted. Subsequently, Dr. Terry Killian of Killian and Associates in Springfield, Illinois was appointed to conduct a psychiatric examination of Mr. Adams for the purpose of giving opinions regarding Adams's fitness to stand trial, his sanity at the time of his alleged crimes and for possible psychiatric mitigation. Dr. Killian was not hired to, nor did he, render any psychiatric or medical treatment to Adams.

The Defendants note that Dr. Killian did not mention in his report that he felt Dennis Adams was suicidal or needed to be under suicide watch. Less than a month before Mr. Adams's suicide, Dr. Killian recommended that Adams be sent for an inpatient evaluation and treatment in the Illinois Department of Human Services. The Defendants allege that no action was taken by the court or the prosecutor to transfer Adams to a facility. Moreover, the Defendants allege they had no control over the court or prosecutor and were helpless to do anything at that time.

The following day, according to the Padded Cell History and Isolation

Cell History, Dennis Adams was transferred out of the Padded Cell and into the Isolation Cell. Andrew Nelson was given a copy of the August 25, 2011 Crisis Assessment prior to his decision to transfer Dennis Adams out of the Padded Cell and into the Isolation Cell. This transfer was done at the direction of Nelson. The transfer was also ordered without the aid, direction, or consultation of any mental health professional and against the recommendation of Julie Chastain on August 25, 2011.

The Isolation Cell is not suicide resistant and contains a number of protrusions that were conducive to suicide attempts by hanging. These include open-faced cell bars, clothing hooks and a towel bar attached to the sink.

According to the letter written by Andrew Nelson to Christian County Sheriff Bruce Kettlekamp dated December 2, 2011, Adams was transferred out of the Padded Cell and into the Isolation Cell because another inmate, Lacey Myers, was booked into the Christian County Correctional Center. Christian County Correctional Center staff knew that Myers suffered from mental health issues, including depression and anxiety, and was a suicide

risk.

The Christian County Correctional Center has only one Padded Cell and one Isolation Cell. According to the December 2, 2011 letter of Andrew Nelson, "Christian County Correctional Center has only one padded cell at its disposal and housing therein is based on immediate need."

According to the Padded Cell History, Inmate Myers was housed in the Padded Cell from August 31, 2011 to September 1, 2011. The Padded Cell was vacant from September 1, 2011 to September 6, 2011, while Mr. Adams was housed in the Isolation Cell. Adams was housed in the Isolation Cell from August 31, 2011 to September 13, 2011.

C. Transfer to Bullpen Area and suicide

According to his letter, Andrew Nelson ordered Dennis Adams transferred from the Isolation Cell to the Bullpen Area on September 14, 2011. The transfer was also ordered without the aid, direction or consultation of any mental health professional and against the recommendation of Julie Chastain on August 25, 2011. Nelson's letter to

Sheriff Kettlekamp provided that he ordered Adams transferred on September 14, 2011, because another inmate incurred a disciplinary infraction. Nelson testified the decision may have been based on information from Christian County Mental Health.

The Isolation Cell Report shows that the next inmate to enter into the Isolation Cell was Aaron Matthews two days later on September 16, 2011. The Bullpen Area of the Christian County Correctional Center is a general population area. It has less restrictions and less monitoring than the Padded Cell and Isolation Cell.

Dennis Adams remained in the Bullpen Area of the Christian County Correctional Center until his suicide on November 4, 2011. On November 4, 2011, at approximately 5:30 a.m., Dennis Adams hung himself in his jail cell. On November 4, 2011, Mr. Adams was due in court regarding the divorce case which was filed by Jolene Adams. When asked whether the court hearing that day could have been an impetus for Adams's suicide, Dr. Killian responded:

> It could be or to make, certainly to make him more suicidal than, I mean he had some suicidal thoughts already, but yes,

that certainly can be.  As I said a trigger at the last moment something can happen and a divorce hearing for men is not a rare event that might trigger suicidal thoughts.

Doc. No. 142, Ex. 8. P. 78.  The Defendants allege it can be inferred that Adams was not suicidal for much of his stay at the Christian County Jail, but became so as his impending divorce case became imminent.

However, Dr. Killian testified he did not perform a suicide assessment because he thought Dennis Adams was in a safe place where it would be difficult to commit suicide.  In fact, Dr. Killian testified he would not have let him out of jail because he thought Adams was a suicide risk.  Dr. Killian testified it was not addressed in diagnoses because it was not a diagnosis.

Additionally, 78 days went by without a suicide attempt.  Dennis Adams was seen twice by a board certified psychiatrist and twice by Christian County Mental Health.  The Defendants assert that no one suggested Adams be left in a padded cell.  Jolene Adams testified she did not believe Dennis Adams was ever suicidal, only homicidal.

While he was evaluated on August 19, 2011 and August 25, 2011 by Christian County Mental Health, Mr. Adams never received any mental

health treatment from Christian County Mental Health. The Defendants allege that Christian County Mental Health Association has no affiliation with Defendant Christian County. Moreover, Christian County Mental Health failed to make a follow up visit through no fault of the Defendants.

On November 4, 2011, the Isolation Cell and the Padded Cell were both unoccupied. The Christian County Sheriff's Office's policy as it related to the housing of suicidal inmates was "the Christian County Correctional Center has only one Padded Cell at its disposal and housing therein is based on immediate need." The "immediate need" as defined in their policy is determined by correctional officers, the jail administrator and the chief deputy. No one in the Christian County Correctional Center was a trained mental health professional.

All deputies must go through a 400-hour basic training course, which includes mental health training. There are also mental health classes during the year.

Dennis Adams was transferred out of the Padded Cell and into the Isolation Cell pursuant to the above mentioned Christian County Sheriff's

Office policy. Adams was transferred out of the Isolation Cell and into the Bullpen Area of the Christian County Correctional Center pursuant to the above mentioned Christian County Sheriff's Office policy. The Padded Cell is a dry cell and has no sink, toilet, or bunk.

D. Plaintiff's claims

There was no policy for the Christian County Sheriff's Office as it relates to the acquisition and procurement of mental health treatment unless Christian County Mental Health initiated treatment. The two entities did not have a contract with one another. The Christian County Sheriff's Office was solely responsible for initiating contact with Christian County Mental Health.

The Plaintiff alleges that Defendant Andrew Nelson was aware of all of these facts concerning Dennis Adams's mental health when decisions were made as to where to place him at the Christian County Correctional Center. Because Mr. Nelson knew of the medical and psychological needs of Mr. Adams, the Plaintiff claims it is undisputed that Nelson acted with deliberate indifference to the constitutional rights of Adams.

The Plaintiff further asserts it is undisputed Mr. Nelson's actions were done pursuant to the policies of the Christian County Sheriff's Office. Moreover, the policies were deficient and did not meet constitutional standards.

The Plaintiff's fourth amended complaint alleges a number of civil rights violations committed against Mr. Adams by the Defendants, as follows: two Fourteenth Amendment Conditions of Confinement claims (Counts II and IV) and a Fourteenth Amendment Failure to Provide Medical Attention claim (Count VI) against Defendant Jail Administrator Andrew Nelson in his individual capacity; two Fourteenth Amendment Conditions of Confinement claims asserted against the Defendants in their official capacities (Counts I and III), a Fourteenth Amendment Failure to Provide Medical Attention claim against Sheriff Bruce Kettlekamp, Jail Administrator Andrew Nelson and Christian County (Count V), and three Monell claims (Counts VII-IX) against Sheriff Bruce Kettlekamp in his official capacity as the Sheriff of Christian County.

Accordingly, the Plaintiff claims that summary judgment is warranted

as to liability and the case should be set for a trial on damages.

The Defendants deny that they violated any of Dennis Adams's constitutional rights. Moreover, the Defendants allege that they relied upon Christian County Mental Health as well as Dr. Terry Killian in placing and caring for Dennis Adams.

The Defendants further assert that, for 78 days of incarceration, Dennis Adams never threatened or attempted suicide nor did any health care provider suggest that he was a suicide risk after the first few days of incarceration. Moreover, all jailers of Christian County received annual training in suicide prevention and at no time during Dennis Adams's 78 days of incarceration did any jailer observe anything which would suggest that Adams was suicidal.

## II. DISCUSSION

Plaintiff Estate of Dennis E. Adams contends it is entitled to summary judgment for a number of reasons. First, the Plaintiff alleges Defendant Andrew Nelson was deliberately indifferent to Dennis Adams's conditions of confinement when he transferred Mr. Adams out of the Padded Cell and

into the Isolation Cell on August 31, 2011 without the aid, consultation or advice of a mental health professional. Second, the Plaintiff asserts Andrew Nelson was deliberately indifferent to Dennis Adams's serious medical needs when he obtained no medical or mental health treatment when he was incarcerated and he knew Mr. Adams had a serious medical need. Third, the Plaintiff contends the Christian County Sheriff's Office is liable because of their unconstitutional policy as it relates to the transfer of Dennis Adams. Fourth, the Christian County Sheriff's Office had no policy in place for the procurement of mental health and medical treatment at the Christian County Correctional Center.

The Defendants dispute the Plaintiff's allegations and claim that, regardless of whether the Court employs an objective or subjective analysis, there are genuine issues of material fact which preclude the entry of summary judgment.

A. Legal standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  The Court construes all inferences in favor of the non-movant.  See Siliven v. Indiana Dept. of Child Services, 635 F.3d 921, 925 (7th Cir. 2011).  To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture."  See Harper v. C.R. England, Inc., 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted).  Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion.  See Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008).  Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor.  See id.

B. Individual capacity claims

(1)

In Count II, the Plaintiff alleges Dennis Adams was "incarcerated under conditions that posed a substantial risk of serious harm to his health or safety in that he was transferred out of the Padded Cell without the aid, recommendation or advice of a mental health professional and against the

recommendation of Julie Chastain on August 25, 2011." See Doc. No. 100, at 11. This deliberate indifference resulted in harm when Adams committed suicide.

The parties dispute the standard that applies in analyzing the individual capacity claims. In considering a Fourteenth Amendment excessive force claim, the United States Supreme Court recently held that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015). Although Kingsley involved an excessive force claim and not inadequate conditions of confinement or failure to provide medical care, as in the instant case, the claims in both cases arise under the Fourteenth Amendment. Accordingly, the Plaintiff alleges the same standard should apply.

The Defendants contend the rule in Kingsley should be held to apply only to excessive force claims and not deliberate indifference claims, as alleged here. Under a subjective standard, "a plaintiff must put forth evidence to establish that the defendant knew of a serious risk to the

prisoner's health and consciously disregarded that risk." Holloway v. Delaware County Sheriff, 700 F.3d 1063, 1073 (7th Cir. 2012). This requires "more than negligence and it approaches intentional wrongdoing." Id. The subjective deliberate indifference standard is analogous to criminal recklessness. See id.

The Court believes that, because the same language of the Fourteenth Amendment would apply to either claim, it is likely that the rule in Kingsley will be held to apply to medical care or conditions of confinement cases such as this one. Even though Defendant Nelson does not allege that qualified immunity applies, however, the Court does not believe it would be appropriate to hold a Defendant sued in his individual capacity to a standard that did not apply when he committed acts which are alleged to violate one's constitutional rights. Accordingly, the Court believes that the subjective standard is most appropriate in this case.

The Plaintiff alleges that Defendant Andrew Nelson was deliberately indifferent to Dennis Adams's conditions of confinement when he transferred Adams out of the Padded Cell and into the Isolation Cell on

August 31, 2011 without the aid, consultation or advice of a mental health professional.  The Plaintiff acknowledges that there was only one Padded Cell at the facility.  Another inmate, Lacey Myers, was placed in the Padded Cell on August 31, 2011.  Andrew Nelson testified it was Myers's three attempted suicides in the previous three months which caused him to view her as more of a suicide risk than Adams.  Nelson also testified that it was his observations of Adams that led him to terminate his suicide watch.  It would not have been unreasonable for Nelson to believe that Adams was less likely to commit suicide 12 days after he was first jailed (or 78 days after he was jailed).  See Jutzi-Johnson v. United States, 263 F.3d 753, 757 (7th Cir. 2001) ("The likelihood of suicide is highest between 2 and 14 days of confinement.").

Upon viewing the evidence in a light most favorable to the Defendant, the Court cannot say that Nelson was deliberately indifferent when he determined that it was appropriate to place inmate Lacey Myers in the Padded Cell instead of Dennis Adams.  The inmate who had made a number of recent suicide attempts was placed in the single Padded Cell.

While an argument might be made that Adams should have returned to the Padded Cell after Myers was removed and the cell became vacant on September 1, 2011, the dry Padded Cell was not designed to hold inmates for a long period of time. The Plaintiff's transfer out of the Padded Cell on August 31, 2011, is not related to his suicide more than two months later. The Plaintiff is not entitled to summary judgment on Count II.

(2)

In Count IV, the Plaintiff alleges Dennis Adams was "incarcerated under conditions that posed a substantial risk of serious harm to his health or safety in that he was transferred out of the Isolation Cell without the aid, recommendation or advice of a mental health professional and against the recommendation of Julie Chastain on August 25, 2011." See Doc. No. 100, at 13. This deliberate indifference resulted in harm when Adams committed suicide. It was on September 14, 2011 when Defendant Nelson transferred Adams out of the Isolation Cell and into the Bullpen Area of the Christian County Correctional Center. However, the Plaintiff alleges that it does not matter whether Adams was in the Isolation Cell or the Bullpen

Area because neither was suicide resistant. The Plaintiff contends that Nelson deliberately ignored the substantial risk of self-harm to Adams when he placed him in the general population area.

The Plaintiff alleges the argument is nearly identical to the argument relating to Count II. For the same reasons, the Court concludes that Plaintiff is not entitled to summary judgment on Count IV.

(3)

In Count VI, the Plaintiff alleges Defendant Andrew Nelson was deliberately indifferent to the health and safety of Dennis Adams when Nelson failed to provide medical attention in violation of the Fourteenth Amendment. This deliberate indifference resulted in harm when Adams committed suicide.

The Plaintiff asserts an individual claim against Andrew Nelson, alleging he was deliberately indifferent to Dennis Adams's serious medical needs when he obtained no medical or mental health treatment while incarcerated and Nelson knew Adams had a serious medical need. Nelson never ordered or requested treatment for Adams throughout the time he

was housed at Christian County Correctional Center.  The Plaintiff alleges Nelson knew Adams was suicidal but did nothing to procure mental health or medical treatment for Adams.  This deliberate indifference resulted in harm when Adams committed suicide.

The Plaintiff further asserts Defendant Nelson admitted it was his job to "reach out to Christian County Mental Health" to have them provide mental health. Nelson was aware that if inmates had medical issues, they would need to go to Taylorville Memorial Hospital.  Additionally, Nelson was aware of the discharge instructions from Taylorville Memorial Hospital as well as the two Crisis Assessments from Christian County Mental Health.  However, Nelson did nothing.  Accordingly, the Plaintiff alleges Nelson was deliberately indifferent to the serious medical needs of Dennis Adams and summary judgment is appropriate as to Count VI.

The Court concludes there are genuine issues of material fact which precludes the entry of summary judgment.  The record shows that the Defendants took certain measures when Adams was first incarcerated and housed in the Padded Cell.  The Plaintiff does not provide any evidence of

an enhanced risk of suicide on November 4, 2011. The Defendants allege Adams did not exhibit suicidal behavior in the days leading up to his suicide. Moreover, they took reasonable measures in attempting to ensure Adams's safety. Cell checks were conducted in a timely manner and the Defendants relied on staff observations, as well as Christian County Mental Health Association's approval, to conclude that cell checks be conducted every 30 minutes, instead of every 15 minutes. The Defendants further assert that court officials and the Christian County Mental Health Association both had opportunities to further evaluate Adams or place him in a mental health institution, but declined to do so.

For all of these reasons, there are factual disputes regarding whether Andrew Nelson was deliberately indifferent in failing to provide medical attention. Accordingly, summary judgment is not warranted on Count VI. The Plaintiff's motion as to Count VI will be denied.

### C. Official capacity claims against Sheriff Bruce Kettlekamp

Counts I, III and V are claims against Sheriff Bruce Kettlekamp in his official capacity. Counts I and III are conditions of confinement claims.

Count V is a failure to provide medical attention claim.

In Count I, the Plaintiff asserts that the transfer of Dennis Adams out of the Padded Cell without the aid, recommendation or advice of a mental health professional violated the Fourteenth Amendment. In Count III, the Plaintiff alleges Adams's transfer out of the Isolation Cell violated the Fourteenth Amendment for the same reasons. In Count V, the Plaintiff asserts Sheriff Kettlekamp was deliberately indifferent to Adams's health or safety, which resulted in harm when Adams committed suicide.

"A suit against a governmental officer in his official capacity is really a suit against the entity of which the officer is an agent." Franklin v. Zaruba, 150 F.3d 682, 684 n.2 (7th Cir. 1998). Moreover, "§ 1983 suits against sheriffs in their official capacities are in reality suits against the county sheriff's department." Id. at 686. Accordingly, any claims against Defendants Kettlekamp in his official capacity are actually claims against the Christian County Sheriff's Department.

It does not appear that the Plaintiff has specifically moved for summary judgment as to Counts I, III and V. In any event, the claims

contained in those counts are duplicative of the individual capacity claims asserted against Andrew Nelson in Counts II, IV and VI. For the reasons discussed in considering those claims, the Plaintiff's Motion as to Counts I, III and V will be denied.

### D. Monell claims and Christian County policy and transfer

In Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), the Supreme Court held that while municipalities can be found liable under § 1983, a municipality cannot be held liable for § 1983 claims based on a theory of respondeat superior. See id. at 690-91. To establish it is entitled to summary judgment, the Plaintiff must show there is no genuine dispute that the municipality was deliberately indifferent due to a custom or policy which contributed to the injury. See Palmer v. Marion County, 327 F.3d 588, 594 (7th Cir. 2003). "[T]here must be an affirmative link between the policy and the particular constitutional violation alleged." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).

The Plaintiff notes that the entirety of the Christian County

Correctional Center's "Jail Rules and Regulations" policy is as follows:

> The Christian County Mental Health Center will be notified immediately of any inmate who appears to be suicidal or in a crisis state of mind. If an inmate is placed in suicide watch, the types of supervision will be documented. A suicide watch can only be terminated by the Jail Administrator, Chief Deputy or Sheriff.

The Plaintiff also notes that both Sheriff Kettlekamp and Defendant Nelson adopted the policy that "the Christian County Correctional Center has only one Padded Cell at its disposal and housing therein is based on immediate need." The Plaintiff claims that this "immediate need" policy is the inherent extension of the written policy which was found in the Christian County Jail Rules and Regulations.

The Plaintiff alleges in Count VII that these policies were inadequate and flawed and include a number of omissions. The written policy did not address most of the basic components of a suicide prevention policy. The inherent dangerousness of the policy is highlighted by the policy's allowance of the Jail Administrator, Chief Deputy or Sheriff to independently assess suicidal inmates and determine when they were no longer suicidal without ongoing assessment by medical and/or mental health

27

personnel.  "Jail managers who decided to take no precautions against the possibility of inmate suicide–to have no policy, for example no suicide-watch option–would be guilty of deliberate indifference in the relevant sense."  Boncher v. Brown County, 272 F.3d 484, 486 (7th Cir. 2001) (citing Manarite v. City of Springfield, 957 F.2d 953, 957 (1st Cir. 1992); Greason v. Kemp, 891 F.2d 829, 839 (11th Cir. 1990)).  "[T]hey would be ignoring a known and serious risk of death of persons under their control for whose safety they are responsible."  Id. at 486.

The Plaintiff's expert, Lindsay M. Hayes, states: "Jail staff should never be placed in a position to determine when an inmate is no longer suicidal and, consistent with the standard of care, such decisions should only be made by medical and/or mental health personnel following an assessment of suicide risk."  Neither Jail Administrator Nelson, Chief Deputy Bruce Engeling nor Sheriff Kettlekamp were mental health professionals and qualified to determine whether or not an inmate was at a continued risk for suicide.  Moreover, Defendant Nelson had no prior experience working in a correctional facility, nor did he have any prior

mental health training.

The Plaintiff further alleges that Christian County suicide prevention policies and procedures were inherently dangerous because only one Padded Cell and one Isolation Cell were designated to house suicidal inmates. The Padded Cell had no sink, toilet or bunk. Mr. Hayes states that "the standard of care is that, if utilized, a padded cell is normally intended for use only up to a few hours until such time as the inmate can be moved to another longer-term suicide-resistant cell." Moreover, Dennis Adams was housed in the Padded Cell from August 19 through August 31, 2011, which was "an unconscionable length of time that required (because only one jail officer was routinely on duty), a patrol officer from the street to return to the [Christian County Correctional Center] and allow Mr. Adams to be escorted out of the Padded Cell to use the toilet in another cell."

The Plaintiff alleges the decision to only require two cells (one of which is not suicide resistant) to house suicidal inmates created the potential problem of determining other alternative housing placements if more than one suicidal inmate was housed at the Christian County

Correctional Center. That happened in this case when, according to Defendant Nelson, Dennis Adams was removed from the Padded Cell on August 31, 2011, because another suicidal inmate needed to be placed in the cell. Nelson also removed Adams from the Isolation Cell on September 13, 2011 because another inmate needed to be placed in that cell for disciplinary purposes. Regarding the August 31 relocation, Bruce Engeling, the Chief Deputy, testified at his deposition that "[t]here's no way to know who's the most suicidal out of two people. You'd have to do your best - - your best judgment on it until Mental Health got there and they could decide where - - who should be placed where."

In Count VIII, the Plaintiff alleges that this policy, custom and/or practice concerning the placement of inmates was the moving force behind the death of Dennis Adams.

According to Lindsay Hayes, there were a number of omissions in Christian County's jail suicide prevention policy which deviated from the standard of care, as follows:

> [T]he policy failed to address required suicide prevention training, as well as any description of topics to be addressed in

any suicide prevention training to its staff; failed to provide any written procedure or guidance on which affirmative responses to the intake screening process warranted referral to medical and/or mental health personnel; failed to provide any written procedure or guidance as to the suicide risk assessment process utilized by either medical and/or mental health personnel, as well as the reassessment process utilized by such personnel; failed to provide any written procedure or guidance as to whether the suicidal inmate should be placed in a suicide-resistant cell; failed to provide any written procedure or guidance regarding the multiple levels of observation utilized for inmates commensurate with their level of suicide risk; failed to provide any written procedure or guidance regarding those personnel authorized to downgrade and/or discharge an inmate from suicide precautions; failed to provide any written procedure or guidance regarding treatment planning for suicidal inmates, as well as follow-up assessments by medical and/or mental health personnel following release from suicide precautions; failed to provide any written procedure or guidance regarding the proper emergency response to a suicide attempt (including hanging); and failed to provide any written procedure or guidance regarding the mortality review process following an inmate suicide.

Mr. Hayes also noted that:

[T]he Christian County Sheriff's Office had a contract to house inmates for the U.S. Marshals Service. The U.S. Marshals Service's website has an abundance of listed resources to assist contracting counties to establish and maintain a reasonable suicide prevention program. It was apparent from this writer's review of the Christian County's suicide prevention policy that Defendant Christian County and Defendant Sheriff Bruce Kettlekamp deliberately ignored the suicide prevention

guidelines as recommended by the U.S. Marshals Service. The Plaintiff alleges nothing has changed since the death of Dennis Adams. The Defendants still lack a suicide prevention cell. The hooks and other protrusions are still present in the Isolation Cell.

The Defendants do not dispute the Plaintiff's allegations regarding the constitutionality of the policy as it relates to the transfer of inmates and specifically to the transfer of Dennis Adams in this case. They do not respond to any of the opinions of the Plaintiff's expert, Lindsay Hayes, who stated that only medical or mental health professionals should determine whether or not an inmate was a continued risk for suicide. Because the Defendant has not responded to the Plaintiff's allegations in Counts VII and VIII which are based on Monell –and the Plaintiff has provided support for those allegations–the Plaintiff is entitled to summary judgment on Counts VII and VIII.

E. Lack of policy for procurement of mental health/medical treatment

The Plaintiff alleges that the Christian County Sheriff's Office had no policy in place for the procurement of mental health and medical treatment

at the Christian County Correctional Center. When a state imposes imprisonment as a punishment for crime, it accepts the obligation to provide persons in its custody with a medical care system that meets minimal standards of adequacy. The "deliberate indifference to the serious medical needs of prisoners" violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). The jail's obligation "included a duty to provide psychiatric care" to a pretrial detainee as needed. See Rice ex. Rel. Rice v. Correctional Medical Services, 675 F.3d 650, 671 (7th Cir. 2012).

The Plaintiff notes that the Christian County Sheriff's Office relied solely upon Christian County Mental Health to provide mental health treatment to the inmates of the Christian County Correctional Center. However, there was no contract between the Christian County Sheriff's Office and Christian County Mental Health. Moreover, the Christian County Sheriff's Office was solely responsible for initiating contact with Christian County Mental Health.

In Count IX, the Plaintiff alleges that the policy was "grossly

inadequate and inherently flawed" in that it "failed to provide any written procedure or guidance regarding treatment planning for suicidal inmates as well as follow up assessments by medical and/or mental health personnel following release from suicide precautions." See Doc. No. 100, at 21. Once again, the Defendants do not dispute the Plaintiff's allegations with respect to the lack of a policy in place for the procurement of mental health and medical treatment at the Christian County Correctional Center. The Plaintiff has supported its allegations with the opinion of Mr. Hayes, who states that it was "reasonable to assume that policies and practices deliberately allowing the jail administrator and other unqualified personnel, including the Sheriff and Chief Deputy, to independently make decisions regarding the discharge of an inmate from suicide precautions without consultation or assessment from either medical or mental health staff was inherently flawed and would ultimately result in suicide." See Doc. No. 132-18, at 10-11. Because the Plaintiff's allegations regarding the lack of or inadequacy of the policy as it related to the procurement of mental health treatment at the Christian County's Sheriff's Office are not disputed

by the Defendants, the Plaintiff is entitled to summary judgment on the Monell claim against Christian County as alleged in Count IX.

## III. CONCLUSION

For the reasons stated herein, the Plaintiff's Motion for Partial Summary Judgment will be Allowed as to the Monell claims asserted in Counts VII, VIII and IX. The issue of damages as to those counts will be determined at trial.

The Plaintiff's Motion for Partial Summary Judgment will be Denied as to Counts I, II, III, IV, V and VI.

The jury trial will be bifurcated.

Ergo, the Plaintiff's Motion for Partial Summary Judgment [d/e 131] is ALLOWED in part and DENIED in part.

The Plaintiff's Motion is ALLOWED as to Counts VII, VIII and IX.

The Plaintiff's Motion is DENIED as to Counts I, II, III, IV, V and VI.

The Plaintiff's Amended Motion to Strike [d/e 139] is DENIED AS MOOT.

The Defendants' Motion for Leave to File an Amended Response to the Plaintiff's Motion for Summary Judgment [d/e 142] is ALLOWED. The Defendants have filed the Amended Response [d/e 142-1].

The final pretrial conference remains set for April 7, 2017 at 2:00 p.m., in chambers.

ENTER: March 9, 2017

FOR THE COURT:

 /s/ Richard Mills
Richard Mills
United States District Judge